# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

DALE A. SMERUD,

      Plaintiff,

vs.

DAVE SMUTZLER, Assistant Chief of
Police of Decorah, Iowa, and MIKE
ASHBACHER, Fire Chief of Decorah,
Iowa,

      Defendants.

No. C14-0011-LRR

ORDER

---

      This matter is before the court pursuant to the motion to dismiss (docket no. 8) that Mike Ashbacher filed on May 20, 2014, the motion to dismiss (docket no. 9) that Dave Smutzler filed on May 21, 2014, the amended complaint (docket no. 15) that the plaintiff filed on September 15, 2014, the additional document (docket no. 17) that Mike Ashbacher filed on October 3, 2014, the additional documents (docket no. 18) that the plaintiff filed on October 6, 2014 and the additional documents (docket no. 19) that Dave Smutzler filed on October 7, 2014.

      In a prior order, the court set forth the applicable standard for a motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Moreover, where a plaintiff is granted in forma pauperis status, dismissal of the action is required if the court determines at any time that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1). In light of the

record,[1] the court is convinced that dismissal is warranted because the plaintiff's action is frivolous or fails to state a claim upon which relief can be granted.[2]

The facts are as follows:

> Around approximately 1:30 a.m. on February 22, 2013, a search warrant was executed at 2705 College Drive by the Winneshiek County Sheriff's Office and the Decorah Police Department. A strong chemical odor consistent with that of an active methamphetamine laboratory could be detected outside the residence. Only one set of footprints leading to the residence was visible in the fresh snow. Six individuals were at the residence. All of them were under the influence of controlled substances.
>
> Jessica Lynn Kipp, Justin James Bradley, Stanley George Colsch, Carrie Connie Crawford and Keith Allan Munson were all on the main floor of the residence. The plaintiff was in the basement of the residence, which was accessed through an outside doorway and stairs. The plaintiff had been in the basement for most of the evening.
>
> During the search, the plaintiff, who was wearing blue jeans and a grey sweatshirt, fled the basement and jumped over a fence. An officer pursued the plaintiff, directed him to stop and tased him because he did not comply with the officer's

---

[1] Despite the fact that any claims that are not realleged in the amended complaint could be deemed abandoned, *see In re Wireless Tel. Fed. Cost Recover Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005), the court deems it appropriate to consider the plaintiff's original complaint and amended complaint collectively.

[2] A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a court may dismiss sua sponte those claims that fail "'to raise a right to relief above the speculative level. . . .'", *see Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atl.*, 550 U.S. at 555), or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

directive. The plaintiff dropped into the snow, rolled around, screamed that he was giving up, laid on his stomach and put his arms out to the side. After the plaintiff was apprehended, officers handcuffed him. When asked if he was okay and if he had been injured by the taser, the plaintiff indicated that he was okay and thought the taser missed him. Officers escorted the plaintiff back to the residence.

Because a visible cloud or gassing could be seen coming from several containers that were inside the basement while standing on the basement stairs and a strong chemical odor was present, officers decided to abort the tactical clearing of the basement due to their safety. A clandestine methamphetamine laboratory was in the basement, and the plaintiff was actively attending to it before the search.

The plaintiff indicated that the type of laboratory that was in the basement was a "shake and bake" style laboratory utilizing the fertilizer stick (ammonium sulfate) method, that he was at the "gassing" stage and that there was no pressure that needed to be relieved from any containers. Officers suited up in protective gear and donned self contained breathing apparatus in order to remove items from the laboratory in the basement. Officers checked all of the containers with PH strips and neutralized several items.

Because an active methamphetamine laboratory was located in the basement of the residence and there were several containers of various unknown liquids in the basement and near the kitchen, everyone was evacuated from the residence and transportation was arranged so that the six suspects could be placed in jail. Jessica Lynn Kipp, Justin James Bradley, Stanley George Colsch, Carrie Connie Crawford and Keith Allan Munson all denied having been in the basement and were taken to the driveway area to stage for transport to the Winneshiek County Jail. After being transported to such jail, they were directed to shower after removing their clothes, which were neutralized, bagged and disposed of in the appropriate manner. None of the individuals located on the main level of the residence were decontaminated at the scene because they denied being in the laboratory, did not admit that they were involved with the manufacturing of

methamphetamine and nobody could place them in the basement.

The plaintiff was escorted down the driveway to meet with members of the Decorah Fire Department for decontamination and medical personnel so that they could remove a taser prong. The taser prong was removed. Smutzler explained to the plaintiff that he had to be decontaminated because he had just excited the laboratory and that he could not be placed in the ambulance to be examined by medical personnel until he was properly decontaminated. Smutzler also explained to the plaintiff that he would need to stand on a plastic grate, he would be showered, his clothes would be removed and he would be showered again. The plastic grate was placed by a large fire truck and an ambulance on College Drive, a county highway. The plaintiff stood on the plastic grate, the plaintiff was sprayed off with the hose from the fire truck by a fireman, the plaintiff's clothes, some of which were cut off because he was handcuffed, were removed and the plaintiff was sprayed off again with the hose from the fire truck. A sheet was held up on one side of the plaintiff to shield him from others, including the suspects from the main floor of the residence that were being taken to jail. After being showered off the second time, the plaintiff was immediately covered up in blankets and sheets from the ambulance and placed in the ambulance. While the plaintiff was in the ambulance, the plaintiff's lower lateral left calf was examined. A small puncture mark was visible, but it was not bleeding or inflamed.

The plaintiff reported no injuries; he was checked by medical personnel and declined any additional treatment after being stopped by a taser. Officers spoke to the plaintiff before he was taken to the Winneshiek County Jail. The plaintiff indicated that nothing in the basement was going to hurt anyone who was trying to clean things up. At some point during their conversation with the plaintiff, officers took a break so that the plaintiff could get warmer clothes on. While speaking to the plaintiff, an officer noticed what he believed to be a chemical burn on the left side of the plaintiff's face.

Based on those facts, the court finds that: (1) no constitutional violation occurred; (2) the defendants are entitled to qualified immunity; (3) the defendants cannot be held liable for acting in their official capacities; and (4) neither compensatory damages nor punitive damages are available to the plaintiff.

It is clear that the decision to decontaminate the plaintiff was reasonable because the plaintiff was the only individual who was in the basement and actively manufacturing methamphetamine. The five other individuals were discovered on the main level of the residence, and, consequently, were not similarly situated to the plaintiff. *See Glover v. Eight Unknown D.E.A. Agents*, 225 F. App'x 781, 783-87 (11th Cir. 2007) (concluding that the claims based on the Fifth Amendment, Eighth Amendment and Fourteenth Amendment lacked merit and the claims based on the Fourth Amendment did not survive because the entry and seizure were lawful and the decontamination process was not excessive); *Schnebelen v. Porter*, No. 1:07-CV-125 TC, 2010 U.S. Dist. LEXIS 99394 *14-32, 2010 WL 3791622 (D. Utah Sept. 21, 2010) (deciding that no right under the Fourth Amendment, Fifth Amendment, Eighth Amendment or Fourteenth Amendment was violated); *Minton v. Shultz*, No. 3:06-CV-320, 2008 U.S. Dist. LEXIS 72471 *13-19, 2008 WL 4380440 (E.D. Tenn. Sept. 23, 2008) (deciding that there was no Fourth Amendment violation where the officer had reason to believe that decontamination was required before plaintiff could be transported); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (stating that a violation of the Fifth Amendment may occur only if it can be said that the conduct is so egregious that it shocks the conscience). *But see Ames v. Brown*, No. 05-6389, 2006 U.S. App. LEXIS 17092 *15-19, 2006 WL 1875374 (10th Cir. 2006) (concluding that sufficient evidence of a Fourth Amendment violation existed because a jury could conclude that defendant's decision to remove plaintiff's pants was objectively unreasonable and defendant acted with an evil intent or callous indifference). It is also clear that the manner in which the plaintiff was decontaminated did not violate any constitutionally protected right. Although the plaintiff was naked on

a residential street, the plaintiff speculates that someone other than those individuals who were involved in the decontamination process saw him naked. And, even if someone saw the plaintiff when he was naked and being sprayed off with a hose, it is evident that any viewing of the plaintiff during the decontamination process occurred as a result of the inadvertent actions of those individuals who took part in such process because they took reasonable steps to protect the plaintiff's privacy. *See Glover*, 225 F. App'x at 786-87 (finding that no constitutional violation occurred because the agents reasonably, even if mistakenly, believed that a decontamination procedure of the duration imposed was necessary); *Schnebelen*, 2010 U.S. Dist. LEXIS 99394 *20-24 (determining that defendants had ample justification to decontaminate plaintiffs and the nature and scope of the intrusion were reasonable under the circumstances). *But see Minton*, 2008 U.S. Dist. LEXIS 72471 *19 (concluding that Fourth Amendment claim based on the execution of the decontamination procedure survived summary judgment because evidence revealed that the efforts made to protect plaintiff's privacy were virtually nonexistent). There is no basis to infer that those individuals who participated in the decontamination process acted objectively unreasonable in light of the totality of the circumstances that they confronted. Rather than indicate that the plaintiff was abused, the facts indicate that the plaintiff's welfare strongly influenced the behavior of those individuals who decontaminated the plaintiff.

Further, no violation of a clearly established constitutional right of which a reasonable person would have known occurred. *See Plumhoff v. Rickard*, ___ U.S. ___, ___, 134 S. Ct. 2012, 2022-23 (2014) (addressing the defense of qualified immunity and emphasizing that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it"); *Glover*, 225 F. App'x at 786-87 (addressing the allegation that officers stripped the suspect's clothes off and blasted him with a fire hose for fifteen minutes in below freezing temperatures and

concluding that the officers were entitled to qualified immunity because an objectively reasonable officer in the same situation could have believed that the force used was not excessive); *Minton*, 2008 U.S. Dist. LEXIS 72471 at *18-19, 2008 WL 4380440 at *6 (deciding that officers were entitled to qualified immunity for making the decision to have a suspect decontaminated). An objectively reasonable officer in Smutzler's position or fireman in Ashbacher's position could have believed that the actions undertaken to decontaminate the plaintiff were constitutional. Thus, the defendants are entitled to immunity from liability.

Additionally, in neither the complaint nor the amended complaint did the plaintiff assert that he was suing the defendants in their individual capacities. Consequently, the plaintiff only sued the defendants in their official capacities. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) (noting that it is assumed that a plaintiff is suing a defendant only in his or her official capacity if a plaintiff does not expressly and unambiguously state that a defendant is being sued in his or her individual capacity). The plaintiff, however, does not allege that he was sprayed off pursuant to an unconstitutional policy or as a result of a failure to properly supervise or train an employee. Given his allegations, the plaintiff's action is subject to dismissal. *See id*. at 766-67 (determining that plaintiff failed to set forth sufficient facts to show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation).

Lastly, the plaintiff seeks $1,250,000.00 for his mental and physical humiliation and asks that Smutzler be reprimanded in some way so that he does not abuse his authority. The requested monetary relief, however, is not available to the plaintiff. Because the plaintiff does not allege that he suffered a physical injury that was more than de minimus, the plaintiff's ability to recover compensatory damages is limited. *See* 42 U.S.C. § 1997e(e); *see also Williams v. Hobbs*, 662 F.3d 994, 1011-12 (8th Cir. 2011) (discussing the availability of compensatory damages); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (concluding that 42 U.S.C. § 1997e(e) limits the recovery for mental or emotional

injury in all federal actions brought by prisoners). The facts do not justify the award of compensatory damages, which are only available if an inmate has the requisite physical injury to support a claim for mental or emotional suffering. *Cf. Ames*, 2006 U.S. App. LEXIS 17092 *21-22 (concluding that, even though plaintiff commenced an action based on an incident that predated his incarceration, plaintiff could not recover compensatory damages because he was subject to the physical injury requirement of 42 U.S.C. § 1997e(e)); *Napier v. Preslicka*, 314 F.3d 528, 532-33 (11th Cir. 2002) (addressing "suffered while in custody" language of 42 U.S.C. § 1997e(e)). And, the facts do not justify the award of punitive damages, which are only available if an inmate establishes that the defendants acted with evil motive or reckless indifference. *See Williams*, 662 F.3d at 1011-12 (discussing the standard for awarding punitive damages). So, nominal damages would only be available to the plaintiff.

In light of the foregoing, the plaintiff's complaint is dismissed as frivolous or for failing to state a claim upon which relief can be granted. The defendants' motions to dismiss are granted. The clerk's office is directed to enter judgment in favor of the defendants. Because the court deems it appropriate to dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and/or 28 U.S.C. § 1915A(b)(1), the dismissal of this action counts against the plaintiff for purposes of the three-dismissal rule set forth in 28 U.S.C. § 1915(g).

**IT IS SO ORDERED**.

**DATED** this 15th day of October, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA